UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

THOMAS B.,

                Plaintiff,             **DECISION AND ORDER**

      v.

                                                               1:23-CV-00807 EAW

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

# INTRODUCTION

Represented by counsel, plaintiff Thomas B. ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 6; Dkt. 7), and Plaintiff's reply (Dkt. 8). For the reasons discussed below, the Commissioner's motion (Dkt. 7) is granted, and Plaintiff's motion (Dkt. 6) is denied.

## BACKGROUND

Plaintiff protectively filed his application for DIB on October 30, 2020. (Dkt. 5 at 25, 79).[1] In his application, Plaintiff alleged disability beginning July 25, 2018. (*Id.* at 25, 181). Plaintiff's application was initially denied on February 12, 2021, and on reconsideration on August 25, 2021. (*Id.* at 25, 195-201, 201-07). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Matthew Levin on August 23, 2022. (*Id.* at 25, 40-75). On September 1, 2022, the ALJ issued an unfavorable decision. (*Id.* at 22-39). Plaintiff requested Appeals Council review; his request was denied on June 14, 2023, making the ALJ's determination the Commissioner's final decision. (*Id.* at 5-11). This action followed.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II. <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of

Regulation No. 4 (the "Listings").  *Id*. § 404.1520(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id*. § 404.1509, the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id*. § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id*. § 404.1520(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id*. § 404.1520(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

## DISCUSSION

### I.   The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520.  Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act on September 30, 2019.  (Dkt. 5 at 27).  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity from July 25, 2018, the alleged onset date, through the date last insured.  (*Id*.).

At step two, the ALJ found that, through the date insured, Plaintiff suffered from the severe impairments of diabetes mellitus, obesity, obstructive sleep apnea, and chronic obstructive pulmonary disease ("COPD") (*Id.*). The ALJ further found that Plaintiff's medically determinable impairments of thyroid disorder, hypertension, and back and neck pain were non-severe. (*Id.* at 27-28).

At step three, the ALJ found that, through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 28-29). The ALJ particularly considered the criteria of Listings 3.02, 11.14, and the effects of Plaintiff's obesity in reaching his conclusion. (*Id.* at 29).

Before proceeding to step four, the ALJ determined that, through the date last insured, Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following additional limitations:

> [Plaintiff] can occasionally climb stairs and ramps, but should avoid all ladders, ropes, or scaffolds. [He] can occasionally balance, which is further defined as needing to avoid narrow, slippery, and erratic moving surfaces, as well as occasionally stoop, kneel, crouch, and crawl. [Plaintiff] must avoid even moderate exposure to temperature extremes, wetness, humidity, dust, odors, fumes, and pulmonary irritants.

(*Id.* at 30). At step four, the ALJ found that, through the date last insured, Plaintiff was unable to perform any past relevant work. (*Id.* at 33).

At step five, the ALJ relied on the testimony of a vocational expert to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform through the date last insured, including the representative occupations of router, mail clerk, and office

helper.  (*Id.* at 33-34).  Accordingly, the ALJ found that, through the date last insured, Plaintiff was not disabled as defined in the Act.  (*Id.* at 34).

II.     **The Commissioner's Determination is Supported by Substantial Evidence and Free from Reversible Error**

Plaintiff asks the Court to vacate the ALJ's decision and remand this matter to the Commissioner, arguing that the ALJ "erred by making his residual functional capacity (RFC) using his own lay interpretation of the raw medical record." (Dkt. 6-1 at 1).  The Court is unpersuaded by this argument.

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  An RFC finding "is an administrative finding, not a medical opinion, which is reserved exclusively to the ALJ as the fact-finder in the case." *William F. v. Comm'r of Soc. Sec.*, No. 20-CV-01293-MJR, 2022 WL 16631050, at *6 (W.D.N.Y. Nov. 2, 2022).  While the ALJ must consider and weigh the various medical opinions of record, his "RFC conclusion need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence." *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022).

An ALJ generally "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted)).  In other words, "[a]n ALJ is prohibited from 'playing doctor' in the sense that an ALJ may not substitute his own judgment for competent medical opinion." *Quinto v. Berryhill*, No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) (quotation omitted).  But "[t]he Second Circuit has rejected the argument that remand is

required due to a lack of medical opinions when 'the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity.'" *Keller v. Comm'r of Soc. Sec.*, 394 F. Supp. 3d 345, 352 (W.D.N.Y. 2019) (quoting *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013)). And "under certain circumstances, particularly where the medical evidence shows relatively minor physical impairment, an ALJ permissibly can render a common-sense judgment about functional capacity even without a physician's assessment." *Id.*; *see also Louis C. v. Comm'r of Soc. Sec.*, No. 1:23-CV-00079 EAW, 2024 WL 805634, at *6 (W.D.N.Y. Feb. 27, 2024) ("where the record reflects only minor impairments, the ALJ may, in his discretion, assess an RFC in the absence of opinion evidence").

The record in this case contained the opinions of non-examining state agency physicians Dr. G. Wang and Dr. B. Stouter. (Dkt. 5 at 175-76, 185-86). Dr. Wang and Dr. Stouter each concluded that Plaintiff's medical impairments were not severe and that there was insufficient evidence to adjudicate Plaintiff's claim prior to the date last insured. (*Id.*). The ALJ found these opinions to have "little persuasive value," and concluded that "there [was] sufficient evidence to assess [Plaintiff's] residual functional capacity over the relevant period." (*Id.* at 32).

Plaintiff does not argue that the ALJ should have credited the opinions of Drs. Wang and Stouter, but instead contends that it was "a remandable error" for the ALJ to make "his RFC finding with no medical expert opinions in support." (Dkt. 6-1 at 7). The Court disagrees. Initially, the Court observes that while Drs. Wang and Stouter concluded that there was insufficient evidence to assess Plaintiff's RFC prior to the date last insured, the

ALJ had before him significant additional evidence that these physicians had no opportunity to consider. This evidence included an MRI that was taken on April 12, 2017, but not submitted until after the hearing on August 22, 2024. (*See* Dkt. 5 at 43, 479). This MRI showed no evidence of disc herniation or central canal stenosis of the cervical spine region and no evidence of degenerative facet arthropathy or neural foraminal stenosis of the cervical spine. (*Id*. at 479). The ALJ expressly relied on this evidence when assessing Plaintiff's claims of "significant back and neck pain with radiation of the pain to his lower extremities." (*Id*. at 28). The ALJ also had the benefit of Plaintiff's chiropractic records. (*Id*. at 452-61).

The Court also disagrees with Plaintiff that the ALJ "should have ordered a consultative examination or had a medical expert testify." (Dkt. 6-1 at 9). While an ALJ has a duty to develop the record, "a medical source statement or formal medical opinion is not necessarily required" if the record otherwise contains sufficient information to permit the ALJ to assess the claimant's RFC. *Monroe v. Comm'r of Soc. Sec.,* 676 F. App'x 5, 8 (2d Cir. 2017). In this case, the ALJ appropriately relied upon the treatment notes of Plaintiff's physicians, which showed only minor physical limitations, notwithstanding Plaintiff's history of noncompliance with the treatment prescribed for both his diabetes and his sleep apnea. (*See* Dkt. 5 at 30-32). As the ALJ recounted, physical examinations of Plaintiff during the relevant time period described him as "well appearing with a normal gait," and "[r]espiratory examination[s] performed over the relevant period were entirely normal." (*Id*.; *see, e.g., id*. at 389 (physical examination showing "[l]ungs breath sounds are clear bilaterally, no wheezing, rhonchi, or rales" and "normal gait" with "[g]ood

strength in all extremities"), 393 (same)). The ALJ reasonably relied on this medical evidence, his assessment of Plaintiff's subjective complaints, and Plaintiff's activities of daily living (specifically, having provided care to his ill father, *see id.* at 32) to fashion an RFC finding that adequately accounted for Plaintiff's medical impairments.

Under the circumstances of this case, the ALJ did not err in determining Plaintiff's RFC without relying on a formal medical opinion. The ALJ rationally linked the limitations in his RFC finding to Plaintiff's documented impairments. Specifically, the ALJ accounted for Plaintiff's obesity, diabetes, and sleep apnea (and the associated possibility of dizziness, fatigue, and deconditioning, and Plaintiff's reports of peripheral neuropathy) by limiting him to light work with additional postural limitations. (*Id*. at 31). The ALJ accounted for Plaintiff's respiratory impairments by imposing environmental limitations. (*Id*. at 31-32). The Court finds the ALJ's common-sense assessment of Plaintiff's RFC to be well-supported by the evidence of record.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 7) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 6) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: December 16, 2024
       Rochester, New York